**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: CITRIX DATA SECURITY BREACH LITIGATION** | MDL NO. |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF KENNETH HASSON'S
MOTION FOR TRANSFER AND CENTRALIZATION OF ACTIONS TO THE
EASTERN DISTRICT OF PENNSYLVANIA PURSUANT TO 28 U.S.C. § 1407 FOR
<u>COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS</u>**

## INTRODUCTION

Plaintiff Kenneth Hasson ("Movant") in the matter *Hasson v. Comcast Cable Communications LLC*, Case No. 2:23-cv-05039 (E.D. Pa.), respectfully submits this Memorandum of Law in Support of his Motion for Transfer and Centralization of Actions to the Eastern District of Pennsylvania Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings.

Movant seeks transfer and assignment of the twelve (12) actions listed in the Schedule of Actions and any subsequently filed tag-along actions (collectively, the "Related Actions") to the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings. There are presently no fewer than twelve (12) substantially similar Related Actions filed by plaintiffs on behalf of proposed nationwide classes in three (3) separate federal district courts, all alleging similar wrongful conduct against Comcast Cable Communications LLC, Comcast Corporation, and Citrix Systems, Inc. Movant's case is the first filed case in the United States District Court for the Eastern District of Pennsylvania, which is also the location of Comcast's headquarters.

Each of the Related Actions involve common questions of law and fact as they arise from a data breach in which cybercriminals were able to leverage a vulnerability in a Citrix network device that is utilized by Comcast and other companies across the country (the "Data Breach"). To date, the Data Breach has resulted in the compromise of the personally identifying information ("PII") of over thirty-six million customers of Comcast. The Related Actions seek redress on behalf of individuals whose PII was accessed and exfiltrated because of Comcast's and Citrix's alleged failure to reasonably and properly secure it.

Based on the increasing number of actions and jurisdictions involved, informal coordination is not a viable alternative to streamline the pretrial litigation process. Centralization of the Related Actions for consolidated and coordinated pretrial matters to the Eastern District of

1

Pennsylvania would be convenient for the parties and witnesses and would promote the just and efficient conduct of the Related Actions. Further, the actions are all at their infancy, as all have been recently filed, with no responsive motions filed. Therefore, now is an appropriate time for the Related Actions to be consolidated or coordinated.

## **BACKGROUND**

Comcast is one of the largest providers of cable internet access in the United States. In the course of providing internet services, Comcast collects and stores customers' PII, including names, contact information, dates of birth, the last four digits of social security numbers, as well as security questions and answers. In its ordinary course of business, Comcast also uses one or more on-premises Citrix-based networking devices for application delivery and/or virtual private network connectivity. However, those Citrix products used by Comcast were identified as having a critical vulnerability that could be exploited by cybercriminals and that has been actively exploited by cybercriminals since August 2023. In response to the vulnerability, Citrix notified its customers, including Comcast, of the vulnerability in or around October 2023, and further released a patch to fix the vulnerability related to its networking devices.

However, before Comcast issued the patch to resolve vulnerability, cybercriminals were able to exploit the vulnerability in its on-premises Citrix devices, gain access to Comcast's internal systems, and exfiltrate customer PII between October 16, 2023 and October 19, 2023. Comcast later announced the Data Breach on or about December 18, 2023, indicating that the Data Breach compromised the PII of at least 36 million individuals.

As a result of Comcast's and Citrix's cybersecurity failings, so far, twelve (12) separate class action lawsuits have been filed across three (3) separate United States District Courts in the wake of the Data Breach. Seven (7) of the Related Actions were filed in the Eastern District of

Pennsylvania, the location of Comcast's headquarters.[1] Another four (4) Related Actions were filed in the Southern District of Florida, the location of Citrix's headquarters.[2] And one (1) other Related Action was filed in the Northern District of Illinois.[3] Comcast is named as a defendant in eleven (11) of the Related Actions, and Citrix is named as a defendant in five (5) Related Actions. While the claims differ slightly from complaint to complaint, each Related Action alleges materially identical facts, and seeks certification of overlapping classes of individuals whose PII was compromised in the Data Breach. Consistent with the Panel's practice in similar data breach litigation and to promote judicial efficiency, Movant seeks transfer of the Related Actions to the United States District Court for the Eastern District of Pennsylvania.

## ARGUMENT

I.   **TRANSFER IS APPROPRIATE PURSUANT TO 28 U.S.C. § 1407(A).**

Centralization and transfer are permitted if civil actions pending in different districts "involv[e] one or more common questions of fact" and this Panel determines that transfer will further "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). "The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and

---

[1] *Hasson v. Comcast Cable Communications LLC*, Case No. 2:23-cv-05039 (E.D. Pa.); *Prescott v. Comcast Corporation*, Case No. 2:23-cv-05040 (E.D. Pa.); *Hendrickson v. Comcast Corporation*, Case No. 2:23-cv-05072 (E.D. Pa.); *Wilson v. Comcast Cable Communications LLC*, Case No. 2:23-cv-05091 (E.D. Pa.); *Nanez et al. v. Comcast Cable Communications LLC*, Case No. 2:23-cv-05092 (E.D. Pa.); *Keung v. Comcast Cable Communications LLC*, Case No. 2:23-cv-05110 (E.D. Pa.); and *Verdier v. Comcast Corporation et al.*, Case No. 2:23-cv-05137 (E.D. Pa.).

[2] *Kirkpatrick v. Citrix Systems, Inc.*, Case No. 0:23-cv-62409 (S.D. Fla.); *Brown v. Comcast Cable Communications LLC, et al.*, Case No. 0:23-cv-62392 (S.D. Fla.); *Hammond et al. v. Citrix Systems, Inc. et al.*, Case No. 0:23-cv-62409 (S.D. Fla.); and *Carey v. Citrix Systems, Inc. et al.*, Case No. 0:24-cv-60008 (S.D. Fla.).

[3] *Munoz v. Comcast Cable Communications LLC*, Case No. 1:23-cv-17096 (N.D. Ill.).

effort of the parties, the attorneys, the witnesses, and the courts." Manual for Complex Litigation, § 20.131 (4th ed. 2004).

Transfer and centralization for pretrial proceedings would achieve each of those objectives as the Related Actions all arise from the same factual core—a data breach impacting the PII of millions of individuals. Indeed, the Related Actions involve nearly identical facts, the same defendants, similar proposed classes, and the number of cases grows by the day. Absent a transfer order by the Panel, the parties will incur unnecessary costs and judicial inefficiencies due to duplicative motions practice and discovery from courts in Pennsylvania, Florida, and Illinois (at a minimum), and will face the risk of inconsistent rulings. For these reasons, and those discussed below, transfer is appropriate pursuant to 28 U.S.C. § 1407(a).

### A.      The Litigation Involves Common Questions of Fact.

"Transfer under Section 1407 does not require a complete identity of common factual issues as a prerequisite to transfer, and the presence of additional facts or differing legal theories is not significant when the actions still arise from a common factual core." *In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d 1373, 1376 (J.P.M.L. 2012).

Here, the Related Actions all arise out of the same factual core—the Data Breach and subsequent harm that occurred, impacting millions of individuals. The Panel has previously centralized actions arising out of a single data breach. *See, e.g.*, *In re MOVEit Customer Data Sec. Breach Litig.*, No. MDL 3083, 2023 WL 6456749 (J.P.M.L. Oct. 4, 2023); *In re KeyBank Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1372 (J.P.M.L. 2023); *In re Samsung Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1368 (J.P.M.L. 2023); *In re T-Mobile Customer Data Sec. Breach Litig.*, 576 F. Supp. 3d 1373 (J.P.M.L. 2021); *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1363 (J.P.M.L. 2020); *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350 (J.P.M.L. 2019); *In re Marriott Int'l, Inc.,*

4

*Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372 (J.P.M.L. 2019); *In re Uber Techs., Inc.,*
*Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351 (J.P.M.L. 2018); *In re Ashley Madison Customer*
*Data Sec. Breach Litig.*, 148 F. Supp. 3d 1378 (J.P.M.L. 2015); *In re: Schnuck Markets, Inc.,*
*Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1380 (J.P.M.L. 2013).

As with those prior data breaches, the Data Breach here has spawned similar litigation bound to a single event—the compromise of millions of individuals' PII as the result of a software vulnerability. Each Related Action therefore raises common factual issues, including but not limited to: (1) the cause, extent, and scope of the Data Breach; (2) investigations into the Data Breach; (3) communications between Comcast and Citrix concerning the Data Breach; (4) Defendants' data security measures prior to the Data Breach; (5) actions taken to remedy the Data Breach and the data security deficiencies that led to it; (6) any contractual obligations between the Defendants; (7) the adequacy of the notice of the Data Breach; and (8) the harm stemming from the Data Breach.

Given the similar claims raised in each Related Action, adjudicating these and other common issues in a single transferee court will benefit the parties and witnesses while promoting judicial efficiency, as a single court can easily coordinate the pretrial proceedings governing the claims along with these common issues. *See e.g.*, *In re MOVEit Customer Data Sec. Breach Litig.*, 2023 WL 6456749, at *2 ("All actions can be expected to share common and complex factual questions as to how the MOVEit vulnerability occurred, the circumstances of the unauthorized access and data exfiltration, and Progress's response to it, as well as the response of various downstream MOVEit users and customer-facing defendants with whom plaintiffs did business."); *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d at 1353 ("[W]hen, as here, the actions stem from the same data breach, and there is significant overlap

in the central factual issues, parties, proposed classes, and claims, we find that creation of a single MDL is warranted.").

> **B.**     **Transfer for Consolidated or Consolidated Pretrial Proceedings Would Serve the Convenience of the Parties and the Court, Promote Judicial Efficiency, and Avoid Duplication of Resources.**

Centralization and coordination will further the convenience of the parties and promote the just and efficient conduct of the Related Actions because it will eliminate repetitive discovery and any possibility of conflicting rulings. *See, e.g.*, *In re KeyBank Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d at 1373 ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification and *Daubert* motions; and conserve the resources of the parties, their counsel, and the judiciary."); *In re MOVEit Customer Data Sec. Breach Litig.*, 2023 WL 6456749, at *2 ("[W]e find that centralization of these actions in the District of Massachusetts will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. All actions can be expected to share factual questions arising from allegations that a vulnerability in Progress Software Company's MOVEit Transfer and MOVEit Cloud file transfer services was exploited by a Russian cybergang in May 2023, which to date is estimated to have compromised the personally identifying information (PII) of over 55 million people.").

Further, centralization will avoid inconsistent rulings as the Related Actions involve similar facts and claims, and each are proposed overlapping nationwide class actions. *See In re Target Corp. Customer Data Sec. Breach Litig.*, 11 F. Supp. 3d 1338 (J.P.M.L. 2014) (consolidating actions arising out of a data security breach on behalf of state and/or nationwide classes that asserted either a combination of state and/or federal claims); *In re Enron Securities Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting a transfer in part to prevent

inconsistent pretrial rulings, particularly with respect to questions of class certification); *In re Plumbing Fixtures*, 308 F. Supp. 242, 244 (J.P.M.L. 1970) ("[A] potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring such related actions to a single district for coordinated or consolidated pretrial proceedings."). As a result, without transfer and centralization there is a high likelihood of numerous potentially overlapping classes, raising the risk of inconsistent rulings and inefficiency.

Finally, the procedural posture of each of the Related Actions supports consolidation. Here, each of the Related Actions is still in its infancy, as all have been filed within the past month and neither Defendant has filed an answer or responsive pleading. *See In re Neo Wireless, LLC, Pat. Litig.*, 610 F. Supp. 3d 1383, 1385 (J.P.M.L. 2022) ("[T]he common early procedural posture among the actions will facilitate their efficient coordination."). Now is the perfect time for centralization for coordinated and consolidated pre-trial proceedings, as the transferee court will not be forced to duplicate efforts undertaken by other courts or reconcile prior court rulings.

Because the Related Actions are still in the early stages of litigation, bring common factual questions and issues, and the transfer of which would convenience the parties and witnesses and further the just and efficient conduct of all Related Actions, Movant respectfully submits the requirements of § 1407(a) have been satisfied.

## II.    THE EASTERN DISTRICT OF PENNSYLVANIA IS THE MOST APPROPRIATE TRANSFEREE VENUE.

The Related Actions should be transferred to the Eastern District of Pennsylvania, where a majority of the Related Actions are filed and where Comcast is headquartered, because the district has a relatively light docket and the district is a readily accessible venue for multidistrict litigation.[4]

---

[4] Comcast, one of the principal defendants is headquartered in Philadelphia, Pennsylvania, making the Eastern District of Pennsylvania the likely location of some of the witnesses and documents

The Panel previously has chosen readily accessible transferee districts that have favorable docket conditions. *In re: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.*, 787 F. Supp. 2d 1358, 1360 (J.P.M.L. 2011) (transferring to a district with "favorable docket conditions"); *In re Lending Tree, LLC, Customer Data Security Breach Litig.*, 581 F. Supp. 2d 1367, 1368 (J.P.M.L. 2008) (transferring to a district that "has the capacity to handle this docket and, in the past, has been underutilized as a transferee district."); *In re Rembrandt Techs., LP, Pat. Litig.*, 493 F. Supp. 2d 1367, 1370 (J.P.M.L. 2007) (transferring to "a readily accessible district with the capacity to handle this litigation").

Currently, the Eastern District of Pennsylvania has more favorable docket conditions when compared to the national average. The Eastern District of Pennsylvania has 22 judgeships with 345 actions per judgeship, compared to the national average of 631 actions per judgeship.[5] Further, the Eastern District of Pennsylvania averages seven months from the time of filing to disposition, better than the national average of 8.7 months.[6] The Eastern District of Pennsylvania also has a long history of successfully managing high-profile multidistrict litigation. *See, e.g.*, *In re Diet Drugs*, 990 F. Supp. 834 (J.P.M.L. 1998); *In re Tylenol Mktg., Sales Practices and Prods. Liab. Litig.*, 936 F. Supp. 2d 1379 (J.P.M.L. 2013); *In re Zoloft Prods. Liab. Litig.*, 856 F. Supp. 2d 1347 (J.P.M.L. 2012); *In re: Nat'l Football League Players' Concussion Injury Litig.*, 842 F. Supp. 2d 1378 (J.P.M.L. 2012). As such, transferring the Related Actions to the Eastern District of

---

that will be relevant to the case. *See In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d at 1354 (concluding the District of New Jersey was the appropriate transfer district in part because at least two of the defendants in a data breach action were headquartered in New Jersey).

[5] *See United States District Courts –Nat'l Judicial Caseload Profile* (September 2023), https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0930.2023.pdf.

[6] *Id.*

Pennsylvania is unlikely to impose a great burden on the judges of the Eastern District of Pennsylvania.

Additionally, the Eastern District of Pennsylvania is readily accessible for multidistrict litigation and would be a convenient forum for many parties. For parties who are not within driving distance, the Philadelphia International Airport is "a large hub airport serving 25.24 million passengers" in 2022 alone.[7] "Twenty-seven airlines, including all major domestic carriers, offer nearly 323 daily departures,"[8] including multiple daily flights to major hub cities and others, including Atlanta, Chicago, Charlotte, Fort Lauderdale, Miami, New York, Pittsburgh, Washington[9]—all cities where counsel for the parties are located. Finally, located in Philadelphia, a major metropolitan area, the Eastern District of Pennsylvania has numerous hotel accommodations located in close proximity to the courthouse.[10]

## **CONCLUSION**

For the reasons discussed above, the Eastern District of Pennsylvania presents the most logical choice for the necessary transfer of the Related Actions. Therefore, Movant respectfully request that the Panel enter an order pursuant to 28 U.S.C. § 1407 transferring the Related Actions set forth in the Schedule of Actions, as well as any other actions that may subsequently be filed, to the Eastern District of Pennsylvania for consolidated or coordinated proceedings as described above.

---

[7] *About Us*, Philadelphia Int'l Airport, https://www.phl.org/about/about-us (last visited Jan. 3, 2023).
[8] *Id.*
[9] *All scheduled direct (non-stop) flights from Philadelphia (PHL)*, FlightsFrom, https://www.flightsfrom.com/PHL (last visited Jan. 3, 2024).
[10] The Eastern District of Pennsylvania is also where the majority of the Related Actions are currently pending and where the first-filed action is also pending. *See In re Sierra Wireless, Inc., Sec. Litig.*, 387 F. Supp. 2d 1363, 1364 (J.P.M.L. 2005) (transferring cases to the forum in part because that was where the first-filed action and a majority of pending actions were located).

Dated: January 4, 2024

By:      */s/ Gary F. Lynch*

Gary F. Lynch
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
gary@lcllp.com

*Counsel for Plaintiff Kenneth Hasson*
*Case No. 2:23-cv-05039*