**BEFORE THE UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE:  CITRIX SOFTWARE CUSTOMER DATA SECURITY BREACH LITIGATION** | **MDL No. 3099** |

**PLAINTIFF MARCIA PROTO WILSON'S RESPONSE TO MOTION FOR TRANSFER**
**AND COORDINATION OR CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407**

Steven A. Schwartz
Juliana Del Pesco
Marissa Pembroke
**CHIMICLES SCHWARTZ KRINER**
**& DONALDSON-SMITH LLP**
361 W. Lancaster Avenue
Haverford, PA 19041
Tel: (610) 642-8500
Fax: 610-649-3633
sas@chimicles.com
jdp@chimicles.com
mnp@chimicles.com

## I.     INTRODUCTION

Movant-Plaintiff in *Hasson v. Comcast Cable Communications LLC*, No. 2:23-cv-05039 (E.D. Pa.) has filed a motion seeking coordination or consolidation, pursuant to 28 U.S.C. § 1407, of several cases to the Eastern District of Pennsylvania related to a data breach that occurred within Comcast's systems which affected millions of users and compromised their personal and sensitive data and left them susceptible to crimes such as fraud and/or identity theft.

Plaintiff Marcia Proto Wilson in *Wilson v. Comcast Cable Communications LLC*, No. 2:23-cv-05091 (E.D. Pa.) agrees with Movant-Plaintiff Hasson that the factors warranting the creation of an MDL are present here: there are numerous cases pending in multiple districts against the same Defendants alleging similar claims on behalf of overlapping putative classes of customers affected by the Data Breach. The primary issue before the Panel is which of the prospective courts is the most appropriate transferee forum. For the reasons set forth below, the Eastern District of Pennsylvania is the best situated court to oversee the pretrial proceedings of these cases because it is the judicial district within which Comcast is headquartered (in Philadelphia, PA), and will thus be the location where many of the relevant witnesses, documents and evidence will be located; the pertinent judicial statistics of that forum are favorable as compared to the national average, and the first filed case in that Court has been assigned to Chief Judge John M. Younge who can effectively oversee the pretrial proceedings of these cases.[1]

## II.    FACTUAL BACKGROUND

Plaintiffs in the twelve (12) actions listed in the Schedule of Actions ("Related Actions") allege that Comcast failed to properly secure and safeguard highly valuable, protected, and personally identifiable information, failed to comply with industry standards to protect such

---

[1] Four cases aside from Plaintiff Hasson's and Plaintiff Wilson's have been filed in the Eastern District of Pennsylvania, and it is expected that there will be additional filings.

information, and failed to provide adequate notice to the public that their personal data had been accessed and compromised. The complaints in the Related Actions set forth claims for negligence, negligence per se, breach of implied contract, unjust enrichment, and declaratory judgment, among other claims, and seek damages and injunctive relief.

Comcast owns and operates Xfinity – one of the largest telecommunications companies, and it provides individuals and businesses within the United States with internet services, cable television, landline telephone services and more recently, mobile telephone services. To obtain Xfinity's services, customers are required to entrust Comcast with their personal information. Comcast has a duty to ensure that its customers' personal information is not disseminated or disclosed to unauthorized third parties.

Between October 16, 2023 and October 19, 2023, hackers exploited a security vulnerability within Comcast's internal systems, and accessed the personally identifying information of approximately 36 million Xfinity customers (the "Data Breach").[2] Comcast did not begin to inform customers about the breach until December 18, 2023 (the "Notice").[3]

The Complaint alleges that Comcast knew about the breach much earlier than they disclosed to customers. Comcast's delay allowed hackers to have unauthorized access to Comcast's systems. Plaintiffs' and class members' personal information is now in the hands of cybercriminals. As a result of Comcast's actions, Plaintiffs have suffered an ascertainable loss, injury in fact, and have otherwise been harmed by Comcast's conduct which has placed them at risk of being victimized by fraudulent crimes.

---

[2] Data Breach Notifications, Maine Attorney General, https://apps.web.maine.gov/online/aeviewer/ME/40/49e711c6-e27c-4340-867c-9a529ab3ca2c.shtml (last visited Jan. 23, 2024).

[3] *Notice to Customers of Data Security Incident*, Xfinity (Dec. 18, 2023), https://assets.xfinity.com/assets/dotcom/learn/Notice%20To%20Customers%20of%20Data%20Security%20Incident.pdf?INTCMP=dsi-12152023 ("Notice") (last visited Jan. 23, 2024).

### III.    ARGUMENT

Plaintiff Marcia Proto Wilson agrees that an MDL should be created. The Related Actions assert overlapping claims, are based on multiple common factual allegations, and will involve common legal theories that can be proven by common evidence. Consolidated or coordinated pretrial treatment under 28 U.S.C. § 1407 will assist the parties and the courts in avoiding duplicative rulings on the common issues in dispute. Granting this motion will also serve the convenience of the parties and witnesses and promote the just and efficient resolution of the litigation.

### A.    Transfer and Consolidation is Appropriate Under 28 U.S. § 1407 Because the Related Actions Involve Common Questions of Fact

The threshold requirement for centralization pursuant to § 1407 is the presence of common questions of fact. *See* 28 U.S.C. § 1407. Although common questions must predominate, the statute does not require a "complete identity or even [a] majority" of common questions of fact to justify transfer. *In re Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004).

Here, the common core of factual allegations arises from the Data Breach and the subsequent harm that occurred. Each Related Action raises common factual issues, including but not limited to: (1) the cause and scope of the Data Breach; (2) investigations into the Data Breach; (3) communications concerning the Data Breach; (4) Comcast's security measures leading up to the Data Breach; (5) actions taken by Comcast to remedy the Data Breach; (6) Comcast's contractual obligations with Citrix and those affected by the Data Breach; (7) the adequacy of the notice of the Data Breach; and (8) the harm that resulted from the Data Breach. This common core of factual allegations predominates over any individual questions of fact in each action. To the extent that differences among the cases exist, the transferee judge has broad discretion to employ any number of pretrial techniques to address those differences and efficiently manage the various

3

aspects of litigation. *See, e.g.*, *In re Lehman Bros. Holdings, Inc.,* 598 F. Supp. 2d 1362, 1364 (J.P.M.L. 2009). Additionally, the Related Actions set forth similar claims arising from the Data Breach and seek to certify classes of individuals affected by the Data Breach. Any potential defenses will likely depend on the same evidence.

The Panel has previously centralized actions arising from a single data breach and respectfully requests the same be done here. *See, e.g.*, *In re MOVEit Customer Data Sec. Breach Litig.*, No. MDL 3083, 2023 WL 6456749 (J.P.M.L. Oct. 4, 2023); *In re KeyBank Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1372 (J.P.M.L. 2023); *In re Samsung Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1368 (J.P.M.L. 2023).

**B.    Transfer Will Serve the Convenience of the Parties, Prevent Duplicative Discovery, and Promote Just and Efficient Resolution of These Actions**

The convenience of the parties and prevention of duplicative discovery also favor transfer. *See* 28 U.S.C. § 1407; *In re KeyBank Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d at 1373 (J.P.M..L ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification and *Daubert* motions; and conserve the resources of the parties, their counsel, and the judiciary."). At present, all of the Related Actions are in their infancy, having all been filed within the last few weeks in the immediate aftermath of the announcement of the Data Breach on December 23, 2023. If these cases continue to proceed separately, there will be duplicative discovery because of the many overlapping issues of fact and law. Multiple cases could involve the repetitive depositions of the same company representatives and expert witnesses, as well as production of the same records and responses to duplicative interrogatories and document requests in jurisdictions around the country. *See*, *e.g.*, *In re: Pilot Flying J Fuel Rebate Contract Litig.*, 11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014) ("Centralization will avoid repetitive depositions of Pilot's officers and employees and duplicative document

discovery regarding the alleged scheme."). Absent transfer, the federal court system will be forced to administer, and Comcast will be compelled to defend, these related actions across multiple venues, all proceeding on potentially different pretrial schedules and subject to different judicial decision-making and local procedural requirements. Centralization in one district, with coordinated discovery, is appropriate because it will minimize duplication of effort and burden on all parties. *See In re "Factor VIII or IX Concentrate Blood Prods." Prod. Liab. Litig.*, 853 F. Supp. 454, 455 (J.P.M.L. 1993).

Additionally, and as noted above, all of the Related Actions are at early stages such that none have progressed to the point where efficiencies will be forfeited by the creation of an MDL. *In re Neo Wireless, LLC, Pat. Litig.*, 610 F. Supp. 3d 1383, 1385 (J.P.M.L. 2022). This Panel has routinely recognized that consolidating litigation in one court benefits **both** plaintiffs and defendants. For example, pretrial transfer would reduce discovery delays and costs for plaintiffs and permit plaintiffs' counsel to coordinate their efforts and share the pretrial workload while Comcast's document production will be centralized and travel obligations for its personnel will be minimized. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d 1377, 1379 (J.P.M.L. 2001) ("And it is most logical to assume that prudent counsel will combine their forces and apportion their workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of cost and a minimum of inconvenience to all concerned."). Early into litigation is a great time for centralization for coordinated and consolidated pre-trial proceedings as the transferee court will not duplicate efforts undertaken by other courts or reconcile prior court rulings.

Last, transfer will result in a more just and efficient resolution to the litigation. The Panel recognizes that the avoidance of conflicting rulings is an informing factor as to whether the just

and efficient conduct of a litigation will be advanced by transfer. *See*, *e.g.*, *In re: Endangered Species Act Section 4 Deadline Litig.*, 716 F. Supp. 2d 1369, 1369 (J.P.M.L. 2010); *In re Bristol Bay*, *Salmon Fishery Antitrust Litig.*, 424 F. Supp. 504, 506 (J.P.M.L. 1976). Here, there are at least 12 cases pending and more are expected to be filed. Under this *status quo*, at least three different federal district courts will be ruling on the many common factual and legal issues presented in these cases. The presence of numerous courts currently involved in this litigation creates a clear risk of conflicting rulings, with the potential to generate significant confusion and conflict among the parties, not to mention inconsistent obligations on Comcast. A single MDL judge coordinating pretrial discovery and ruling on pretrial motions in all of these federal cases at once will help reduce witness inconvenience, the cumulative burden on the courts, the litigation's overall expense, and the potential for conflicting rulings. *In re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 65 F. Supp. 3d 1402, 1405 (J.P.M.L. 2014) ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary."); *In re Tylenol Mktg.*, *Sales Practices & Prods. Liab. Litig.*, 936 F. Supp. 2d 1379, 1380 (J.P.M.L. 2013) ("Centralization will . . . prevent inconsistent pretrial rulings (on *Daubert* issues and other matters) . . . .").

Accordingly, transfer to a single district court is warranted here.

### C.   The Most Appropriate Transferee Forum is the Eastern District of Pennsylvania

Plaintiff Marcia Proto Wilson respectfully submits that the Eastern District of Pennsylvania is the most appropriate transfer venue. The Eastern District of Pennsylvania is the district court with the strongest nexus to the litigation, and is an efficient and capable choice to manage it. Comcast is headquartered in Philadelphia, within the judicial district of Eastern Pennsylvania, and in close proximity to the Court. Moreover, the Eastern District of Pennsylvania is where the

majority of the Related Actions are filed and has a light caseload compared to the national average.

Given this, the Eastern District of Pennsylvania is a favorable venue for multidistrict litigation.

> **1.      The Eastern District of Pennsylvania Has the Strongest Nexus to the Litigation**

The Panel has found that the district court with the strongest nexus to the litigation is often selected as the transferee court. *See, e.g., In re: Reciprocal of Am. (ROA) Sales Practices Litig.*, 281 F. Supp. 2d 1356, 1358 (J.P.M.L. 2003). Where a defendant is headquartered is often an important factor in determining the transfer venue. *See In re GAF Elk Cross Timbers Decking Mktg., Sales Practices & Prods. Liab. Litig.*, 65 F. Supp. 3d 1407, 1408 (J.P.M.L. 2014) (transferring MDL to the District in which the common defendant was headquartered); *In re Bluetooth Headset Prods. Liab. Litig.*, 475 F. Supp. 2d 1403, 1404 (J.P.M.L. 2007) (same)); *In re RC2 Corp. Toy Lead Paint Prods. Liab. Litig.*, 528 F. Supp. 2d 1374, 1375 (J.P.M.L. 2007) (same).

Here, Comcast is headquartered in Philadelphia, Pennsylvania, located within the judicial district of the Eastern District. Comcast's headquarters is comprised of two buildings within blocks of each other (collectively, the "Comcast Center"). In fact, the Comcast Center is located merely 1.1 miles from the Court.[4] As of June 2023, Comcast has about 8,000 employees at its Comcast Center headquarters.[5] As the primary defendant, it is expected that many witnesses with

---

[4] *See* Google Maps, Directions from the Comcast Center to U.S. District Court - Eastern District of Pennsylvania, available at
https://www.google.com/maps/dir/Comcast+Center,+John+F+Kennedy+Boulevard,+Philadelphia,+PA/US+Court+House,+601+Market+St,+Philadelphia,+PA+19106/@39.954617,-75.1644958,16z/data=!3m2!4b1!5s0x89c6c883c9a0d2d7:0x22c95019d9b66d!4m14!4m13!1m5!1m1!1s0x89c6c6319a947a7d:0xfa7df47155a21a12!2m2!1d-75.168335!2d39.9549332!1m5!1m1!1s0x89c6c883bcf7bdfb:0x1809934a73aaea2e!2m2!1d-75.1510998!2d39.9510006!3e0?entry=ttu (last accessed Jan. 24, 2024)
[5]   *See*   https://www.inquirer.com/business/comcast/comcast-corporate-office-return-to-work-four-days-week-hybrid-20230622.html#:~:text=Comcast's%20two%20Center%20City%20buildings,location%20for%20about%208%2C000%20employees.

knowledge of the Data Breach, and documents relevant to the litigation, will be located in Philadelphia making the Eastern District of Pennsylvania the venue with the strongest nexus to the litigation. *In re Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d at 1354 (concluding that the D.N.J. was the appropriate transfer district in part because at least two of the defendants in a data breach action were headquartered in New Jersey.); *see also In re General Motors Onstar Contract Litig.*, 502 F. Supp. 2d 1357 (J.P.M.L. 2007) (transferring action to the Eastern District of Michigan instead of another District because "relevant documents and witnesses are likely located in or near defendants' facilities in Michigan").

In light of the foregoing, it is readily apparent that the Eastern District of Pennsylvania has the strongest nexus to the litigation.

### 2.    The Eastern District of Pennsylvania is a Convenient and Efficient Forum for the Litigants

Plaintiff Marcia Proto Wilson believes that the Eastern District of Pennsylvania is a convenient and efficient forum for the litigants. As noted above, most of Comcast's witnesses will be stationed at their headquarters in Philadelphia, located just over 1 mile from the Court. For parties or witnesses not so close, the Eastern District of Pennsylvania is generally readily accessible for multidistrict litigation. Philadelphia is a metropolitan hub on the Eastern United States. Philadelphia International Airport ("PHL") hosts flights from all major airline carriers and serves nearly 25.24 million passengers yearly. [6] The Eastern District is equipped to handle any travel to the district during litigation.

Additionally, the Eastern District of Pennsylvania is experienced in MDL cases. *See e.g.*, *In re Diet Drugs*, 990 F. Supp. 834 (J.P.M.L. 1998); *In re Tylenol Mktg., Sales Practices and*

---

[6]About Us, Philadelphia Int'l Airport, available at, https://www.phl.org/about/about-us (last accessed Jan. 24, 2024).

*Prods. Liab. Litig*., 936 F. Supp. 2d 1379 (J.P.M.L. 2013); *In re Zoloft Prod. Liab. Litig.*, 856 F. Supp. 2d 1347 (J.P.M.L. 2012); *In re Nat'l Football League Players' Concussion Injury Litig*., 842 F. Supp. 2d 1378 (J.P.M.L. 2012).

Moreover, the Eastern District of Pennsylvania has desirable docket conditions, making it a trustworthy venue for multidistrict litigation. *In re: DePuy Orthopedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.*, 787 F. Supp. 2d 1358, 1360 (J.P.M.L. 2011). When compared to the national average, the Eastern District of Pennsylvania has 345 actions per 22 judgeships versus the national average of 631 actions per judgeship.[7]

Last, Chief Judge John M. Younge, to whom the Related Actions filed in the Eastern District of Pennsylvania are assigned, is an excellent and capable jurist. Judge Younge was appointed to the federal bench by President Barack Obama in 2015 and thereafter renominated by President Donald Trump in 2018.[8] While Chief Younge has not yet had the opportunity to preside over an MDL, Plaintiff Marcia Proto Wilson is confident he will utilize the experience and resources that the Eastern District of Pennsylvania has to offer to steer the litigation on a prudent and efficient course.

---

[7] *See United States District Courts –Nat'l Judicial Caseload Profile* (September 2023), https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0930.2023.pdf.

[8] The Consortium, Honorable John Milton Younge, available at, https://consortiuminc.org/john-milton-younge-bio-behavioral-health-services-addictions-mental-wellness-psychiatry-medically-assisted-treatment-mat-helping-families-affected-by-drug-and-alcohol-dependence-suboxone-methadone-men/ (last accessed Jan. 24, 2024).

## IV.      CONCLUSION

Plaintiff Marcia Proto Wilson and Counsel respectfully submit that the Panel create an

MDL pursuant to 28 U.S.C. § 1407 and transfer the cases to the Eastern District of Pennsylvania

for coordinated or consolidated pretrial proceedings before Chief Judge Younge.


Dated: January 26, 2024                                    Respectfully Submitted,

                                          By:      */s/  Steven A. Schwartz*
                                                   Steven A. Schwartz (PA ID No. 50579)
                                                   Juliana Del Pesco (PA ID No. 326725)
                                                   Marissa Pembroke (PA ID No. 330494)
                                                   **CHIMICLES SCHWARTZ KRINER &
                                                   DONALDSON-SMITH LLP**
                                                   361 W. Lancaster Avenue
                                                   Haverford, PA 19041
                                                   Tel: (610) 642-8500
                                                   Fax: 610-649-3633
                                                   sas@chimicles.com
                                                   jdp@chimicles.com
                                                   mnp@chimicles.com

**BEFORE THE UNITED STATES JUDICIAL**
**PANEL ON MULTI-DISTRICT LITIGATION**

| | |
|---|---|
| In re:<br><br>**CITRIX SOFTWARE CUSTOMER DATA SECURITY BREACH LITIGATION** | MDL Docket No. 3099 |

**PROOF OF SERVICE**

Pursuant to Judicial Panel of Multidistrict Litigation Rule 4.1(a), I hereby certify that on January 26, 2024, I caused a copy of the attached Response to Motion for Transfer and Coordination or Consolidation Pursuant to 28 U.S.C. § 1407 of Plaintiff Marcia Proto Wilson to be filed electronically with the Court Clerk's Office using the Court's CM/ECF electronic filing system, and which will cause to be served upon all counsel in this action who accept electronic service.

Respectfully Submitted,

By: /s/ *Steven A. Schwartz*
Chimicles Schwartz Kriner
 & Donaldson-Smith LLP
361 W. Lancaster Avenue
Haverford, PA  19041
Phone:  (610) 642-8500
Email:  sas@chimicles.com

*Counsel for Plaintiff Marcia Proto Wilson*